678 A.2d 369

**COMMONWEALTH of Pennsylvania**

v.

**Kevin NEITZEL, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 8, 1996.

Filed May 21, 1996.

4

Matthew White, Philadelphia, for appellant.

Jonathan Levy, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before CAVANAUGH, J., and CIRILLO and CERCONE, President Judges Emeritus.

CERCONE, President Judge Emeritus:

This is a direct appeal from the judgment of sentence[1] entered following a trial *de novo* at which appellant was

---

1. Appellant has incorrectly characterized this appeal as stemming from an order. In a criminal case, a direct appeal following entry of the verdict and imposition of sentence is an appeal from the judgment of sentence. *Commonwealth v. Chamberlain*, 442 Pa.Super. 12, 16, 658 A.2d 395, 397 (1995). When, as in this case, the appeal follows a trial *de novo* from a summary conviction, the judgment of sentence is immediately final and appealable at the conclusion of the trial conducted in the Court of Common Pleas. Pa. R.Crim.P., Rule 1410(D), 42 Pa.C.S.A.

convicted of violating the Game and Wildlife Code.[2] We affirm.

Appellant, Kevin Neitzel, was a taxidermist at the time of his arrest, with a business address at 4100 Robbins Avenue in the City of Philadelphia. On August 19, 1994, eleven armed officers from the Pennsylvania Game Commission and the United States Fish and Wildlife Service conducted a search of appellant's taxidermy shop at approximately 1:30 p.m., during appellant's regular business hours. *See* N.T. 3/8/95 at 14. The officers seized several items, including two frozen migratory game bird carcasses. The Commonwealth filed two Philadelphia Municipal Court citations on September 28, 1994 charging that appellant had not complied with game tag regulations promulgated under 34 Pa.C.S. § 2103, 16 U.S.C. §§ 703–712, and 50 C.F.R. §§ 20.26 and 20.37 with regard to his possession of a Merganser hen and a Wood Duck hen.

On November 17, 1994, appellant was found guilty as charged in Philadelphia Municipal Court.[3] Appellant was not represented by counsel at the Municipal Court hearing. *See* N.T. 3/8/95 at 4 (averment of defense counsel at appellant's trial *de novo* ). However, appellant engaged the services of an attorney and timely appealed for a trial *de novo* in the Court of Common Pleas. On March 7, 1995, counsel filed an omnibus pre-trial motion on appellant's behalf seeking suppression of evidence. The Honorable Jacqueline F. Allen denied the omnibus motion on March 8, 1995 and the matter proceeded to trial. After the Commonwealth rested, appellant demurred.

---

**2.** The Commonwealth Court of Pennsylvania claims jurisdiction over appeals from criminal prosecutions brought pursuant to the Game and Wildlife Code. *See Dickerson v. Commonwealth*, 138 Pa. Commw. 141, 587 A.2d 379 (1991). However, neither party to the instant appeal has challenged the Superior Court's jurisdiction in this case. In the interests of judicial economy, and because oral argument has already occurred, we shall retain jurisdiction over this appeal and consider the merits of the issues raised herein. *See* Pa. R.A.P., Rule 741(a), 42 Pa.C.S.A. (Waiver of Objections to Jurisdiction); *Fengfish v. Dallmyer*, 434 Pa.Super. 250, 253–54 n. 2 642 A.2d 1117, 1119 n. 2 (1994) (when appellee fails to object to filing of appeal with incorrect court, it is within Superior Court's exercise of appellate jurisdiction to either transfer the matter to Commonwealth Court or to retain jurisdiction).

**3.** The certified record contains neither a transcript nor any other record of these proceedings.

6 

Judge Allen granted the demurrer as to the charge of possessing improperly tagged migratory game birds belonging to another person, but found that the Commonwealth had sustained its burden of proof that appellant had possessed improperly tagged birds belonging to himself. Appellant then testified on his own behalf. Ultimately, Judge Allen found appellant guilty on two counts of violating section 2103 by possessing an improperly tagged Wood Duck hen and Merganser hen. The trial court imposed a fine of one hundred dollars ($100) for each improperly tagged bird. Appellant filed no consolidated post-trial motion. *See* Pa. R.Crim.P., Rule 1410(D), 42 Pa.C.S.A. (there shall be no post-sentence motion in summary case appeals following a trial *de novo* in the Court of Common Pleas).

 Appellant filed a timely notice of appeal, and the trial court directed appellant to supply a concise statement pursuant to Rule of Appellate Procedure 1925. *See* Pa. R.A.P., Rule 1925(b), 42 Pa.C.S.A. Appellant complied, and explained that he was improperly convicted of a crime not charged. The trial court addressed this claim in an extensive opinion, filed July 20, 1995, and concluded that appellant's contentions were meritless. The instant timely appeal followed in which appellant raises two issues: (1) that the lower court erred in holding that appellant could be convicted of an offense for which he was never properly charged; and (2) that the trial court had no authority to amend, *sua sponte*, the charge against appellant at the time of trial to add a new charge not included on the original citation.[4]

**4.** We are cognizant of the Commonwealth's argument that appellant has waived his challenge to the sufficiency of the charge in the original citation by failing to raise it at the Philadelphia Municipal Court hearing and at the trial *de novo*. As previously noted, appellant was unrepresented by counsel at the Municipal Court hearing and the certified record contains no transcript from that proceeding. Defense counsel arguably challenged the prosecution's approach to this case at the trial *de novo* by demurring at the close of the Commonwealth's case in chief. *See* N.T. 3/8/95 at 16. As already discussed, counsel could not file a post-sentence motion from appellant's summary conviction. *See* Pa. R.Crim.P., Rule 1410(D), supra. However, appellant's concise statement of issues identified on appeal apprised the trial court as to the nature of appellant's complaint. Because the trial judge has fully

Appellant does not dispute the fact that the freezer at his taxidermy shop contained two migratory game birds which were not tagged in the manner required by the Code of Federal Regulations.[5] He explained at trial that he hunted the birds himself, and stored them in his home freezer until his wife objected. He then transferred the carcasses to his shop freezer. Appellant also stated that he knew about the game tag requirements for migratory game birds. N.T. 3/8/95 at 19–22. Thus, appellant admitted not only that the migratory game bird carcasses seized by the federal and state agents belonged to him, he also conceded that they were not properly tagged as he knew they should be. However, appellant does not contest the sufficiency of the evidence; rather he argues that he was convicted of a crime not charged in the citation with which the Commonwealth commenced the case against him. In his first issue, appellant contends that he was only charged with possessing two improperly tagged migratory game birds belonging to another person, an offense under section 20.37 of the Code of Federal Regulations. He therefore urges us to find that he did not receive proper notice that the Commonwealth intended to prove that he was guilty of possessing improperly tagged migratory game birds belonging to himself, an offense under section 20.36 of the Code of Federal Regulations.

The information to be included on a citation is specified by Rule of Criminal Procedure 53. At the time of the events underlying the instant appeal, that Rule provided as follows:

(a) Every citation shall contain: ...

 (6) a citation of the specific section and subsection of the statute or ordinance allegedly violated, together with a

addressed appellant's issues, we decline to find technical waiver under the specific and highly unusual circumstances of this case. *Compare Commonwealth v. Hewett*, 380 Pa.Super. 334, 551 A.2d 1080 (1988), *appeal denied*, 522 Pa. 583, 559 A.2d 526 (1989) (rejecting technical waiver argument premised upon defendant's alleged post trial procedural default when trial judge fully addressed merits of claims raised on appeal).

5. As discussed more fully *infra*, the Pennsylvania Game and Wildlife Code adopts by reference certain provisions of the United States Code and the Code of Federal Regulations.

summary of the facts sufficient to advise the defendant of the nature of the offense charged; . . . .

Pa. R.Crim.P., Rule 53(a)(6), 42 Pa.C.S.A. (substantially modified by amendments adopted July 25, 1994, effective January 1, 1995). The former version of the Rule did not require the Commonwealth to recite all possible facts connected to the statutory sections listed in a particular citation. Rather, a citation was deemed to provide proper notice under the prior version of Rule 53 when the statutory cites and the facts recited provided actual notice to a defendant as to the nature of the crimes charged. *Commonwealth v. Cohen*, 413 Pa.Super. 460, 463–64, 605 A.2d 814, 815–16 (1992).

The first citation filed in the instant case accused appellant of committing the following acts:

[Violating] 34 PA C.S. SECTION 2103, REF 16 USC 703–712, AND 50 CFR 2036 & 2037. DEFENDANT WAS IN CUSTODY UNLAWFULLY, OF MIGRATORY GAME BIRD (HEN, WOODDUCK), BELONGING TO ANOTHER, WITHOUT REQUIRED TAGS OR INFORMATION, PURSUANT TO 16 USC 703–712 AND 50 CFR 2036 AND 2037.

Philadelphia Municipal Court Citation, Complaint No. 70231. (The second citation lodged against appellant used virtually identical language, but charged that appellant violated section 2103 with regard to the carcass of a Merganser hen rather than a Wood Duck.) It is apparent on the face of the citations that the Commonwealth accused appellant of violating section 2103 of the Game and Wildlife Code, with reference to certain specifically identified federal laws and regulatory provisions.

The citation charges that appellant violated section 2103 of the Game and Wildlife Code. That statutory section contains the following language:

(a) **General rule.**—The provisions of the Federal Migratory Bird Treaty Act (16 U.S.C. § 703 et seq.) or Federal Duck Stamp Act (16 U.S.C. § 718 et seq.) are hereby made a part of this title. Federal regulations shall not apply if commission regulations or other provisions of this title

prescribe stronger or more detailed restrictions for the taking of migratory birds, nongame birds or game or wildlife.

34 Pa.C.S.A. § 2103(a) (emphasis in original). In order to understand the meaning of section 2103, it is obviously necessary to consult the provisions of the United States Code. In this case, the relevant statute is section 703 of the Migratory Bird Treaty Act:

Unless and *except as permitted by regulations made as hereinafter provided in this subchapter,* it shall be unlawful at any time, by any means or in any manner, to pursue, hunt, take, capture, kill, attempt to take, capture, or kill, possess, offer for sale, sell, offer to barter, barter, offer to purchase, purchase, deliver for shipment, ship, export, import, cause to be shipped, exported, or imported, deliver for transportation, transport or cause to be transported, carry or cause to be carried, or receive for shipment, transportation, carriage, or export, any migratory bird, any part, nest, or egg of any such bird, or any product, whether or not manufactured, which consists, or is composed in whole or in part, of any such bird or any part, nest, or egg thereof, included in the terms of the conventions between the United States and Great Britain for the protection of migratory birds concluded August 16, 1916 (39 Stat. 1702), the United States and the United Mexican States for the protection of migratory birds and game mammals concluded February 7, 1936, the United States and the Government of Japan for the protection of migratory birds and birds in danger of extinction, and their environment concluded March 4, 1972 and the convention between the United States and the Union of Soviet Socialist Republics for the conservation of migratory birds and their environments concluded November 19, 1976.

16 U.S.C. § 703 (emphasis added). The pertinent "regulations" referenced by section 703 concerning "possession" of migratory game birds (and/or game bird parts) have been set forth in the Code of Federal Regulations as follows:

No person shall put or leave any migratory game birds at any place (other than at his personal abode), or in the custody of another person for picking, cleaning, processing, shipping, transportation, or storage (including temporary storage), or for the purpose of having taxidermy services performed, unless such birds have a tag attached, signed by the hunter, stating his address, the total number and species of birds, and the date such birds were killed. Migratory game birds being transported in any vehicle as the personal baggage of the possessor shall not be considered as being in storage or temporary storage.

50 C.F.R. § 20.36 (1994).

No person shall receive or have in custody any migratory game birds belonging to another person unless such birds are tagged as required by § 20.36.

*Id.* § 20.37.

Federal courts have held that the Migratory Bird Treaty Act contains no scienter requirement, but rather provides for strict liability. *United States v. Smith,* 29 F.3d 270, 273 (7th Cir.1994) (citing *United States v. Engler,* 806 F.2d 425, 436 (3d Cir.1986), *cert. denied,* 481 U.S. 1019, 107 S.Ct. 1900, 95 L.Ed.2d 506 (1987); *United States v. Manning,* 787 F.2d 431 (8th Cir.1986); *United States v. Catlett,* 747 F.2d 1102, 1104–05 (6th Cir.1984), *cert. denied,* 471 U.S. 1074, 105 S.Ct. 2153, 85 L.Ed.2d 509 (1985); and *United States v. Ireland,* 493 F.2d 1208, 1209 (4th Cir.1973)). "It is not necessary to prove that a defendant violated the Migratory Bird Treaty Act with specific intent or guilty knowledge." *Smith,* 29 F.3d at 273 (quoting *Manning,* 787 F.2d at 435 n. 4). The purpose of the tagging requirements promulgated pursuant to the Migratory Bird Treaty Act is to facilitate enforcement of the "taking and possession" limits on migratory game birds by obliging a hunter to tag his or her kill after each day's hunt in order to distinguish it from game taken on another day or from game taken by a different hunter. *United States v. Bookout,* 788 F.Supp. 933, 938 (S.D.Texas 1992).

■ Section 703 of the Migratory Bird Treaty Act cannot be understood without reference to the regulations referenced therein and promulgated thereunder. Likewise, the regulatory provision at subsection 20.37 of the C.F.R. is unclear unless it is read in conjunction with subsection 20.36. Indeed, subsection 20.37 makes explicit reference to subsection 20.36. Reading these two regulatory provisions together necessarily would have informed appellant that it was illegal for him to possess improperly tagged migratory game birds in the freezer of his taxidermy shop no matter who was the "true owner" of the birds.[6] We therefore conclude that appellant was provided with fair notice as to the nature of the crimes charged in the instant case. The factual summaries on the citations stated that appellant was unlawfully in custody of migratory game birds "belonging to another" rather than "belonging to himself and/or another;" nevertheless, the citations clearly identified the gravamen of the complaint: the fact that appellant possessed untagged migratory game birds in violation of the Code of Federal Regulations, sections 20.36 (forbidding the possession of an untagged game bird belonging to oneself) and 20.37 (prohibiting possession of an untagged game bird belonging to another). *See Commonwealth v. Frye*, 357 Pa.Super. 395, 401–402, 516 A.2d 38, 43–44 (1986) (*en banc* ) (citation is adequate if its factual summary alerts a defendant to the nature of the offense charged and notifies him of the pending prosecution).[7] Appellant is simply wrong

**6.** As already discussed, appellant actually admitted at trial that he knew of the tagging requirements for migratory game birds. N.T. 3/8/95 at 19–22.

**7.** The dissent would limit this Court's *en banc* holding in *Frye* to only those situations in which an element allegedly omitted on the citation is not an essential element of the offense charged. However, the language of the *Frye* decision itself does not support such a narrow construction:

We must uphold the Commonwealth's position that the summary requirement is meant to "accurately describe the gravamen" of the offense rather than lay out a blow-by-blow description of events. The *Commonwealth v. Weed* case, [3 Pa.D & C 3rd 151 (Cumberland Co.1977)] made the following observation in reference to this:

Although a citation must include a specific section of the statute violated, *it need only show a summary of the facts sufficient to advise the defendant of the nature of the offense charged, notifying him of the*

in claiming that the citations do not reference the statutory subsection under which he was convicted.

In this context, appellant also argues that the citations provided inadequate notice to him of the specific crimes charged because they make no reference to the purpose for which he left the birds at the taxidermy shop. Federal courts have found this type of argument to be non-meritorious. *See, e.g., United States v. Ray*, 488 F.2d 15 (10th Cir.1973). The Code of Federal Regulations clearly prohibits leaving a game bird at *any place other than the home* without affixing the required tag. *Id.* at 18. Under 50 C.F.R. § 20.36, no specific purpose is necessary to charge an offense for leaving a game bird at any location other than the home. *Id.*[8] We appreciate the fact that permitting a person to keep an untagged game bird in a home freezer, but not at his own taxidermy shop, is a fine point of law which may escape the notice of some reputable and well-intentioned hunters and taxidermists. Nevertheless, the Code of Federal Regulations is quite explicit and there is no doubt in this case that the state and federal agents found the game birds in a location other than appellant's home. *See also United States v. Mielke*, 367 F.Supp. 518, 520 (W.D.Okla.1973), *aff'd sub nom. United States v. Ray*, 488 F.2d 15 (10th Cir.1973) (regulation making it a petty offense to leave migratory game birds at any place other than one's abode unless properly tagged by the hunter is not unconstitu-

pending prosecution and affording him a chance to defend himself ... This lenient description of the offense is all that is necessary because the defendant must be served upon the issuance of the citation, giving him immediate notification of the alleged infraction when he is best able to observe and recall facts and circumstances surrounding the incident ... Thus, we conclude that the description of the offense on the citation is adequate so long as it advises the defendant of the nature of the charge.
*Commonwealth v. Frye*, 357 Pa.Super. at 401–02, 516 A.2d at 43 (quoting *Commonwealth v. Stahl*, 296 Pa.Super. 507, 513, 442 A.2d 1166, 1169 (1982); emphasis and ellipses in original).

**8.** The Code of Federal Regulations has been renumbered since *Ray* was filed. At that time, the regulatory provision now set forth at 50 C.F.R. § 20.36 was enumerated as subsection 10.36. However, the language of the regulation has remained unchanged.

tionally vague, overbroad or ambiguous). Thus, we cannot grant relief on the basis of this argument.

Moreover, even if we found the citations to be flawed on their face, we still could not rule in appellant's favor under the circumstances of this case. When a citation contains defects, we must look to the Rules of Criminal Procedure for the consequences. *Commonwealth v. Cohen*, 413 Pa.Super. at 464, 605 A.2d at 816.

### Defects in Form, Content, or Procedure— Summary Cases

A defendant shall not be discharged nor shall a case be dismissed because of a defect in the form or content of a complaint, citation, summons, or warrant, or a defect in the procedures of this Chapter, unless the defendant raised the defect before the conclusion of the summary trial and the defect is prejudicial to the rights of the defendant.

Pa. R.Crim.P., Rule 90, 42 Pa.C.S.A.[9] Our discussion of appellant's claim assumes that his demurrer sufficiently raised and preserved the defect at issue here. Nevertheless, appellant must still show that he was prejudiced, within the meaning of Pennsylvania law, by the alleged inadequacy in the citation. We cannot find the necessary prejudice if the content of a citation, taken as a whole, prevented surprise as to the nature of the summary offenses on which a defendant was found guilty at trial. *Commonwealth v. Cohen*, 413 Pa.Super. at 464, 605 A.2d at 816. As we have already explained, the citations filed in this case adequately apprised appellant that he was charged with violating the federal regulations set forth at 50 C.F.R. §§ 20.36 and 20.37 concerning required tagging of

---

**9.** A comparable rule exists for proceedings which involve non-summary offenses:

**Defects in Form, Content, or Procedure—Court Cases**

A defendant shall not be discharged nor shall a case be dismissed because of a defect in the form or content of a complaint, summons, or warrant, or a defect in the procedures of this chapter, unless the defendant raises the defect before the conclusion of the preliminary hearing and the defect is prejudicial to the rights of the defendant. Pa. R.Crim.P., Rule 150, 42 Pa.C.S.A.

migratory game birds, no matter who was the owner of the birds. Thus, we conclude that appellant did not suffer prejudice within the meaning of *Cohen.*[10]

■ Appellant next contends that Rule 90, *supra,* cannot be read so broadly as to permit the trial court to *sua sponte* amend a citation at trial. However, the certified record shows that the trial court *did not* amend the citation in this case, either *sua sponte* or in response to a Commonwealth motion. The trial judge merely noted in her Rule 1925 opinion that she believes that the Rules of Criminal Procedure authorize a judge of the Court of Common Pleas to amend a citation in a proper case. *See* Trial Court Opinion filed July 20, 1995 at 8. The Superior Court does not render purely advisory opinions. *Erie Insurance Exchange v. Claypoole,* 449 Pa.Super. 142, 149–150, 673 A.2d 348, 352 (1996) (*en banc* ). Because the trial court never amended the citation in the instant case, we decline to consider the merits of appellant's second claim on an advisory basis.

Judgment of sentence affirmed.

CIRILLO, President Judge Emeritus, files a dissenting opinion.

CIRILLO, President Judge Emeritus, dissenting.

Despite the majority's comprehensive statutory history of state and federal wildlife statutes, I believe that the appellant's conviction should have been dismissed, and therefore, I respectfully dissent.

Our court has held that "a citation **must** include a specific section of the statute violated." *Commonwealth v. Cohen,* 413

---

10. The Commonwealth notes that appellant was free to request a continuance at trial if he believed he was being subjected to a "new" charge. *See* Pa. R.Crim.P., Rule 301(a) and (b), 42 Pa.C.S.A. (permitting a trial judge to grant a continuance to a defendant whenever the interests of justice so require). Although we have not reached our decision on this basis, we are nevertheless inclined to agree with the Commonwealth that appellant's failure to seek a continuance during the trial is at least a minimal indication that appellant was under no misapprehension as to the nature of the offenses charged and that he was not in fact surprised by the prosecutor's approach to the case.

Pa.Super. 460, 463, 605 A.2d 814, 816 (1992) (emphasis added); *Commonwealth v. Stahl*, 296 Pa.Super. 507, 442 A.2d 1166 (1982). The Pennsylvania Rules of Criminal Procedure also state:

(A) *Every citation shall contain:*

(6) a citation of *the specific section and subsection of the statue* or ordinance allegedly *violated*, together with a summary of the facts sufficient to advise the defendant of the nature of the offense charged.

Pa.R.Crim.P. 53 (emphasis added). *Cf. Commonwealth v. Alston*, 539 Pa. 202, 651 A.2d 1092 (1994) (an *indictment or information* is sufficient if it sets forth the elements of the offense intended to be charged).

The majority recounts that "[t]he Commonwealth filed two Philadelphia Municipal Court citations ... charging that appellant had not complied with game tag regulations required under 34 Pa.C.S. § 2103 with regard to his possession of a Merganser hen and a Wood Duck hen." Majority at p. 5. "The citations clearly identified the gravamen of the complaint, *i.e.*, the fact that appellant possessed untagged migratory game birds in violation of sections 20.36 and 20.37 of the Code of Federal Regulations." Majority at p. 11. The important fact omitted from these statements, however, is that this citation only cited Neitzel for possessing **another's** game birds. In actuality, however, Neitzel was convicted of possessing a game bird belonging to **himself**. As the trial court opinion notes, the category of the offender differs in regard to the statutory subsection cited in Neitzel's citation and the subsection under which he was actually convicted. Unlike the majority, I cannot regard such an elemental distinction as minor.

Relying on this court's proposition in *Commonwealth v. Frye*, 357 Pa.Super. 395, 401–02, 516 A.2d 38, 43–44 (1986) (*en banc*), that "a citation is adequate if its factual summary alerts a defendant to the nature of the offense charged and notifies him of the pending prosecution," the majority finds that Neitzel was on notice of the charge for which he was

convicted. A close reading of the *Frye* case, however, renders this proposition inapplicable to and improper under the facts of this case.

In *Frye*, the appellant alleged that his citation was defective because it failed to specify both an element of the cited offense as well as a factual detail of the events leading up to his arrest. The *Frye* court determined that the allegedly omitted element was not an essential element of the offense and affirmed appellant's conviction. In the present case, Neitzel does not advance either of the arguments found in *Frye*. Rather, Neitzel complains of the citation's omission of the specific subsection of the statute for which he was convicted.

Because Neitzel was not put on notice of an important element of the crimes for which he was convicted, specifically the category of the offender, I find that the present citation contained a substantial defect, one so prejudicial that the charges should have been dismissed against the appellant. Pa.R.Crim.P. 90. *Cf. Frye*, 357 Pa.Super. 395, 516 A.2d 38 (1986) (*en banc*) (allegation of a mere defect in the summary of the facts or description of the offense in a citation will not require that charges be dismissed or conviction reversed); *Stahl, supra* (same).

I would reverse the judgment of sentence.